IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Rockbridge Commercial Bank,<br><br>    Plaintiff,<br><br>      v.<br><br>HANS M. BRODER, JR., et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:12-CV-2554-TWT |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Silverton Bank, N.A.,<br><br>    Plaintiff,<br><br>      v.<br><br>HANS M. BRODER, JR., et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:12-CV-2569-TWT |

## OPINION AND ORDER

The FDIC, as receiver for Rockbridge Commercial Bank and Silverton Bank, N.A., brings two lawsuits against Defendant Hans M. Broder, Jr., his family, and his companies. The FDIC claims that Broder defaulted on two separate promissory notes and improperly transferred assets to avoid repaying debts. Because the FDIC has

shown that Broder is liable on the promissory notes, judgment should be entered in favor of the FDIC on the notes. However, questions of fact remain concerning whether Broder fraudulently transferred assets to avoid repaying his debts, and summary judgment for the Defendants should be denied in that respect.

## I. Background

The Defendant Hans M. Broder, Jr. borrowed $911,821 from what became Silverton Bank on March 22, 2005, to finance his purchase of stock in Enterprise Banking Company. (See Pl.'s Mot. for Partial Summ. J., [Doc. 81, Case No. 1:12-cv-2569], Ex. A, at 193). The loan agreement was memorialized in a promissory note (the "Silverton Note") and a commercial pledge agreement (the "Silverton Commercial Pledge Agreement"). Pursuant to the agreement, Broder pledged 5,000 shares of Enterprise Banking Company as collateral for the Silverton Note. (See id.)

Similarly, on April 25, 2007, Broder borrowed $800,000 from Rockbridge Commercial Bank to further finance his purchase of stock in Enterprise Banking Company. (See Pl.'s Mot. for Partial Summ. J., [Doc. 83, Case No. 1:12-cv-2554], Ex. A, at 193). That loan was also memorialized in a promissory note (the "Rockbridge Note") and a commercial pledge agreement (the "Rockbridge Commercial Pledge Agreement"). Broder pledged 103,959 shares of Henry County Bancshares, Inc. stock as collateral for the Rockbridge Promissory Note. (See id.)

In 2009, Rockbridge Commercial Bank and Silverton Bank failed, and the FDIC succeeded to all of the banks' rights under the respective notes. See 12 U.S.C. § 1821(d)(2)(A)(i). And in 2010, Broder failed to make payments on the Silverton Note and the Rockbridge Note. The FDIC declared the Silverton Note in default on May 3, 2010, and the Rockbridge Note in default on August 9, 2010. (See Broder Dep. at 56, 74-75).

As his banking interests were collapsing, Broder transferred his interests in eight real property assets to family members or to family-controlled limited liability companies. In September 2008, he transferred his interest in property in Stockbridge, Georgia to his wife, Defendant Lyndy L. Broder.[1] On December 31, 2008, he transferred his interest in another property to Lyndy Broder and his children, Defendants Ashlee Broder Panaro, Gabrielle Broder-Porter, Michelle Broder, and Hans M. Broder III. In January 2009, Broder transferred two pieces of property in Stockbridge to Defendant Broder Enterprises III, LLC, a limited liability company formed on January 1, 2009, and owned by Broder and his family. Broder transferred two other interests in properties in McDonough, Georgia to Broder Enterprises in September 2009. Finally, in October 2010, after defaulting on the Rockbridge and

---

[1] For clarity, Defendant Hans M. Broder, Jr., is referred to as "Broder" in this Order, while the remaining Defendants, including Hans M. Broder III, are referred to with both their first and last names.

Silverton Notes, Broder transferred his interests in two properties in Stockbridge to Defendant Red Oak Road Investments, LLC, which was formed in October 2010 and is 50 percent controlled by Lyndy Broder. (See Broder Aff. ¶¶ 5-11; Broder Dep. Ex. 1 ¶ 18, Ex. 2 ¶ 18).

Broder claims that he made these transfers for legitimate estate-planning purposes, to repay his wife for her hypothecation of jointly-held stock that Broder used as collateral on the Rockbridge Note and the Silverton Note, and in consideration for the care he will receive from his children when he is elderly. The FDIC argues that these transfers were fraudulent attempts by Broder to avoid his obligations on the notes. The FDIC seeks to collect on both notes and brings claims for fraudulent transfer due to actual fraud under O.C.G.A. § 18-2-74(a)(1) and constructive fraud under O.C.G.A. §§ 18-2-74(a)(2)(A) and (B) and 18-2-75(a), and fraudulent transfer pursuant to 12 U.S.C. § 1821(d)(17), as well as to collect attorneys' fees. The Defendants brought a counterclaim for breach of contract but voluntarily dismissed it.

This Order resolves motions brought in cases 1:12-cv-2554-TWT and 1:12-cv-2569-TWT. In both cases, the FDIC moves for partial summary judgment on Broder's liability on the Rockbridge Note and the Silverton Note. The FDIC further seeks attorneys' fees on the notes. The Defendants have filed motions for partial summary

judgment in both cases contending that the FDIC has not met its burden to show that any of the transfers Broder made were fraudulent.

## II.  Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.     FDIC's Motions for Judgment on the Notes

The FDIC seeks partial summary judgment on Defendant Broder's liability for the promissory notes at issue in both cases. The FDIC also seeks an award of attorneys' fees and asks the Court to enter final judgment with respect to its claims on the notes.

### 1.    FDIC's Motions for Partial Summary Judgment

"In a suit to enforce a promissory note, '[i]t is well established that a plaintiff…
establishes a prima facie case by producing the note and showing that it was executed.
Once that prima facie case has been made, the plaintiff is entitled to judgment as a
matter of law unless the defendant can establish a defense.'" Trendmark Homes, Inc.
v. Bank of North Georgia, 314 Ga. App. 886, 887 (2012) (citing Newton v. Sibley,
273 Ga. App. 343, 343 (2005)). Here, Broder admits that he signed the Rockbridge
Note and subsequently defaulted on it. (See Broder Dep. at 64, 75). Likewise, Broder
admits that he signed the Silverton Note and defaulted on it. (Id. at 20, 56). While
Broder admits default, he argues that he is not liable on the notes because the banks
failed to maintain or collect from the collateral that Broder pledged when he signed
the notes. However, neither the terms of the notes themselves nor Georgia law
supports Broder's arguments.

Both the Silverton Note and the Rockbridge Note and their corresponding
pledge agreements specifically state that "Lender shall use ordinary reasonable care
in the physical preservation and custody of the Collateral in Lender's possession, but
shall have no other obligation to protect the Collateral or its value." (See Answer,
Case No. 1:12-cv-2554-TWT, Ex. A, "Rockbridge Commercial Pledge Agreement,"
at 3; Answer, Case No. 1:12-cv-2569, Ex. A, "Silverton Commercial Pledge

Agreement," at 3). Further, the agreements provide that "all of Lender's rights and remedies … shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy." (Rockbridge Commercial Pledge Agreement, at 4; Silverton Commercial Pledge Agreement, at 3). And the Rockbridge Commercial Pledge Agreement further provides that:

> Borrower waives any defenses that may arise, because of any action or inaction of Lender, including without any limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral, and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

(Rockbridge Commercial Pledge Agreement, at 1). Finally, both notes state that "[a]ll parties… agree that Lender may… impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone." (Rockbridge Note, at 3; Silverton Note, at 2). The plain terms of the agreements allow the FDIC to elect how collect on the notes and do not require it to draw on the collateral before obtaining a judgment on the notes against Broder.

Despite these explicit provisions, Broder argues that a commitment letter regarding the Rockbridge Note shows that the FDIC and its predecessor banks had a duty to maintain the collateral. The commitment letter states that, under the agreement

between Broder and Rockbridge, the collateral is "One hundred three thousand nine hundred fifty-nine (103,959) shares of Henry County Bancshares, Inc. Loan will not exceed 75% loan to value; monitored on quarterly basis by Bank." (Cross Dep. Ex. 6). Nothing in the commitment letter indicates that this language overrides the explicit language in the Rockbridge Note or Rockbridge Commercial Pledge Agreement allowing the lender, now the FDIC, to elect any remedy it chooses. The letter only imposes a duty to "monitor" the collateral. There is no indication that this duty to monitor entails a duty to sell the collateral or to take steps to maintain the 75% loan to value threshold. (See Broder Dep. Ex. 5). Indeed, although Broder argues that Silverton Bank undertook the same monitoring obligations when it extended its own loan to Broder, the stock collateral only amounted to 45.6 percent loan to value when that loan was issued. (See Cross Dep. at 19). Further, Ann Cross, who drafted the commitment letter, stated that monitoring the collateral value was something the bank did "for [its] own internal policy." (Id. at 20). The commitment letter does not alter the plain terms of the notes and commercial pledge agreements. Accordingly, the Court concludes that the FDIC and its predecessors did not have a duty to protect the collateral pledges or to collect on the collateral before seeking to recover on the notes.

Moreover, Georgia law does not require a plaintiff to mitigate damages or resort to collateral when it is collecting on a note. "The holder of a note who is also the

grantee in a deed to secure the indebtedness of the note is not forced to exercise the power of sale in the deed. He may sue on the note or exercise the power of sale." REL Dev., Inc. v. Branch Banking & Trust Co., 305 Ga. App. 429, 431 (2010) (citing Trust Inv., etc., Co. v. First Ga. Bank, 238 Ga. 309, 310 (1977)); see also Branch Banking and Trust Co. v. Lichty Bros. Const., Inc., No. 3:10-cv-00054-JOF, 2011 WL 883912, at *2 (N.D. Ga. Mar. 11, 2011) ("To the extent that Defendants are in fact alleging that Plaintiff had a duty to foreclose before suing on the [promissory notes], Georgia law makes clear that Plaintiff had no such duty."). The Court accordingly concludes that Georgia law does not require the lender under the Rockbridge Note or the Silverton Note to mitigate damages by drawing on and protecting the collateral. Because the terms of the notes and Georgia law allow the Plaintiff to collect on the notes without resorting to collateral or even preserving the collateral, the Plaintiff's motions for partial summary judgment should be granted.[2]

---

[2]   The Defendants argue that the FDIC violated its duties under 12 U.S.C. § 1821(d)(13)(E) by failing to preserve the collateral underlying the notes. That statute provides that when the FDIC is disposing of assets as a receiver it must "conduct its operations in a manner which (i) maximizes the net present value return from the sale or disposition of such assets; [and] (ii) minimizes the amount of any loss realized in the resolution of cases." 12 U.S.C. §§ 1821(d)(13)(E)(i) and (ii). Even assuming that this statute provides guidance to finders of fact in suits brought by the FDIC, as the Defendants argue, there is no indication that the FDIC violated the statute. Indeed, should the FDIC collect the total amount owed to it by Broder on the notes, it would appear to have maximized the value collected and minimized its losses in the disposition of assets.

### 2.    FDIC's Motions for Attorneys' Fees

The Plaintiff also seeks attorneys' fees under O.C.G.A. § 13-1-11. That statute provides that "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness … shall be valid and enforceable and collectable as part of such debt if such note … is collected by or through an attorney after maturity." O.C.G.A. § 13-1-11(a). Lenders are required to notify debtors in writing of their intent to collect attorneys' fees unless the debt is paid off within ten days. O.C.G.A. § 13-1-11(a)(3). Here, the Plaintiff notified Broder of its intent to collect attorneys' fees on the Rockbridge Note by letter dated August 9, 2010, and when it filed its complaint. (See Broder Dep. Ex. 3, Ex. B; Case No. 1:12-cv-2554, Complaint ¶ 34). Likewise, the Plaintiff notified Broder of its intent to collect attorneys' fees on the Silverton Note by a letter dated May 3, 2010, and in its complaint. (See Broder Dep. Ex. 1, Ex. B; Case No. 1:12-cv-2569, Complaint ¶ 35). Both notes provide that Broder is liable for attorneys' fees equal to 15 percent of the principal and accrued interest, which is permissible under O.C.G.A. § 13-1-11. (See Silverton Note, at 2; Rockbridge Note, at 2); O.C.G.A. § 13-1-11(a)(1). The FDIC accelerated the notes to their maturities, and used an attorney to collect on them. Accordingly, the Plaintiff's motions for partial summary judgment should be granted with respect to its request for attorneys' fees.

### 3.   FDIC's Motions for Judgment Under Rule 54(b)

The Plaintiff moves for judgment on the notes under Rule 54(b). "When an action presents more than one claim for relief … or when multiple parties are involved, the court may direct entry of final judgment as to one [claim] … only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(B). "Courts should exercise their discretion to enter partial final judgment under Rule 54(b) sparingly." Boone v. Corestaff Support Servs., Inc., 805 F. Supp. 2d 1362, 1378 (N.D. Ga. 2011) (citing In re Southeast Banking Corp., 69 F.3d 1539, 1548 (11th Cir. 1995)).

Courts in the Eleventh Circuit engage in a two-prong test to determine whether entry of  final judgment is appropriate. "First, the court must determine that the decision at issue is a 'final judgment.'" Id. at 1379 (quoting Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980)). "Second, the Court must determine that there is no just reason to delay the appeal." Id. (citing Curtiss-Wright, 446 U.S. at 8).

> Under this second prong of the test, the court must consider the interests of efficient judicial administration and the equities involved in the particular case… Of particular relevance … is the degree to which pending claims are legally and factually intertwined with the adjudicated claim that constitutes a final judgment. … Thus where there is significant factual overlap between the adjudicated and unadjudicated claims, courts should be reluctant to use Rule 54(b).

Id. (citing Curtiss-Wright, 446 U.S. at 8 and Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 166 (11th Cir. 1997)).

Here, the Court concludes the FDIC is entitled to judgment under Rule 54(b). First, the decisions in favor of the FDIC on their motions for partial summary judgment on the promissory notes are final judgments because they "dispose[] entirely of [] separable claim[s]," namely the FDIC's claims on the Rockbridge Note and the Silverton Note. Id. (quoting Lloyd Noland Found., Inc. v. Tenet Health Care Corp., 483 F.3d 773, 777 (11th Cir. 2007)). Next, there are no factual and legal overlaps between the adjudicated claims, those seeking payment on the notes, and the remaining unadjudicated claims for fraudulent transfer. The factual basis for the fraudulent transfer claims concerns Broder's actions in 2008 through 2010 while the factual basis for the claims on the notes concerns agreements made in 2005 and 2007. There are no discernible legal overlaps. Because the Plaintiff's claims on the promissory notes are distinct from the Plaintiff's remaining claims for fraudulent transfer, the Court concludes there is no just reason to delay entering final judgment in favor of the Plaintiff. Accordingly, the Plaintiff's motions for final judgment should be granted.

**B.     Defendants' Motions for Partial Summary Judgment**

The Defendants argue that the Plaintiff has not met its burden in showing that the transfers at issue were fraudulent under any of the fraud causes of action in either case. In general, to establish a cause of action for fraudulent or constructively fraudulent transfers, the plaintiff must show that: "(1) there was a claim against Defendant by Plaintiff; (2) the Defendant did not receive relatively equivalent value in consideration of the transfer; and (3) Defendant was insolvent or likely to become insolvent," CSX Transp., Inc. v. Leggett, No. 1:07-cv-1152-WSD, 2010 WL 3210841, at *4 (N.D. Ga. Aug. 12, 2010) (citing Kipperman v. Onex Corp., 411 B.R. 805, 834 (N.D. Ga. 2009)). Here, there are issues of fact concerning whether Broder received reasonably equivalent value in consideration for the transfers, and the Defendants' motions for partial summary judgment should be denied.[3]

---

[3] The Defendants have filed motions to exclude various aspects of the Plaintiff's expert testimony. (Case No. 1:12-cv-2569-TWT, [Doc. 100]; Case No. 1:12-cv-2554-TWT, [Doc. 102]). Specifically, the Defendants contend that the Plaintiff's expert's calculations of Broder's financial state were redone after the discovery period ended, and that the Defendants should have a chance to re-examine the expert. The Defendants' motions have not been fully briefed. Because the Court will deny the Plaintiff's motions for partial summary judgment based on questions of fact concerning the value of considerations received in exchange for Broder's transfers, and not on Broder's financial circumstances at the time of transfer, the Court need not resolve the Defendants' motions to exclude expert testimony before denying the Defendants' motions for partial summary judgment.

### 1.     Plaintiff's Claims for Actual Fraud

The Plaintiff brings a claim for actual fraud under O.C.G.A. § 18-2-74(a)(1) and under 12 U.S.C. § 1821(d)(17).

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.

O.C.G.A. § 18-2-74. Similarly, 12 U.S.C. § 1821(d)(17) provides that the FDIC, as receiver of an institution, "may avoid a transfer of any interest of an institution-affiliated party… if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution" or the FDIC. 12 U.S.C. § 1821(d)(17).

To assess intent, O.C.G.A. § 18-2-74 lists eleven non-exclusive factors, asking whether:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the

essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

O.C.G.A. § 18-2-74(b). These factors are known as "badges of fraud." See SRB Inv. Servs., LLLP v. Branch Banking and Trust Co., 289 Ga. 1, 4 (2011).

Here, the Defendants claim that the FDIC cannot show the requisite intent because Broder made the transfers pursuant to estate planning purposes, to pay back his wife, Defendant Lyndy Broder, for her hypothecation of stock to him, or in consideration for his children caring for him when he is elderly. However, outside of affidavits from the Broders, the Defendants have not provided any evidence of a hypothecation of stock from Lyndy Broder to Broder or an agreement for elderly care. Further, the Plaintiff has furnished evidence suggesting that the transfers at issue reflect the "badges of fraud" listed above.

First, it is not disputed that Broder transferred assets to insiders: the transfers were made to family members or to companies controlled at least in part by the Broder family. (See Broder Aff. ¶¶ 5-11; Complaint ¶ 18; Answer ¶ 18). Next, there are indications that Broder retained control over the property he transferred and the entities he transferred the property to. Broder Enterprises III, LLC, the recipient of four of the transfers at issue, is a limited liability company comprised of six members: Defendants Hans M. Broder, Jr., Lyndy Broder, Ashlee Broder Parano, Gabrielle Broder-Porter, Michelle Broder, and Hans M. Broder III. Broder himself owns a 25

percent interest in the company. (See Complaint ¶ 22; Answer ¶ 22). At least two of the transfers, the ones in October of 2010, were made after Broder was notified of his defaults on the Rockbridge and Silverton Notes. (See Complaint, Case No. 1:12-cv-2554-TWT, Ex. B; Complaint, Case No. 1:12-cv-2569-TWT, Ex. B). Additionally, Broder became insolvent before or shortly after these transfers were completed. (Broder Aff. ¶¶ 16-17). Finally, as will be discussed further in the next section, there remains a question of fact as to whether Broder received reasonably equivalent values in exchange for the transfers. Accordingly, the Plaintiff has provided sufficient evidence of the "badges of fraud" associated with fraudulent transfers under O.C.G.A. § 18-2-74 to create questions of fact, and the Defendants' motions for partial summary judgment should be denied in this respect.[4]

### 2.    Plaintiff's Claim for Constructive Fraud

The Defendants argue that the Plaintiff cannot show that any of Broder's transfers were constructively fraudulent.

> [A] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer

---

[4] Because the Plaintiff's claim for fraudulent transfer under 12 U.S.C. § 1821(d)(17) also requires a showing that Broder made the transfers with "the intent to hinder, delay, or defraud the insured depository institution," the Plaintiff's evidence also creates an issue of fact on its claim under 12 U.S.C. § 1821(d)(17), and the Defendants' motions for partial summary judgment should be denied in that respect as well. See 12 U.S.C. § 1821(d)(17).

or incurred the obligation… (2) without receiving a reasonably
equivalent value in exchange for the transfer or obligation, and the
debtor: (A) was engaged or was about to engage in a business or a
transaction for which the remaining assets of the debtor were
unreasonably small in relation to the business or transaction; or (B)
intended to incur, or believed or reasonably should have believed that he
or she would incur, debts beyond his or her ability to pay as they became
due.

O.C.G.A. § 18-2-74. Here, again, the Plaintiff has presented sufficient evidence to
create a question of fact capable of defeating summary judgment. First, although
Broder argues that the transfers to his wife and to the limited liability companies were
to repay an earlier stock hypothecation, there is no record of the hypothecation from
Lyndy Broder. Additionally, Lyndy Broder admitted in her deposition that she never
signed her legal title and right to the stock over to her husband. (Lyndy Broder Dep.
at 23). Likewise, Broder himself never listed an obligation to Lyndy Broder on any
financial statement prior to this lawsuit. (See Broder Dep. Exs. 6-11). Importantly, the
Broders admitted that they backdated an alleged "Promissory Agreement" that
purports to memorialize Broder's obligation to Lyndy Broder after these lawsuits were
initiated, although the Broders maintain that the written agreement only memorialized
the arrangement they made in 2007. (See Broder Dep. at 155-56; Lyndy Broder Dep.
at 18-19). This evidence is sufficient to create an issue of fact as to whether Broder
received reasonably equivalent value when he transferred property to Lyndy Broder.
Likewise, there is a question of fact as to whether Broder received reasonably

equivalent value for the transfers of property to the limited liability companies because those transfers, according to Broder, were also in response to Lyndy Broder's hypothecation of the jointly-held stock. (See Defs.' Mot. for Partial Summ. J. at 8-9). Accordingly, those transfers are also not suitable for summary judgment.

Similarly, the transfers that Broder made to his children may not have been in exchange for reasonably equivalent value. Broder argues that those transfers were in consideration of his children caring for him when he is elderly. However, according to O.C.G.A. § 18-2-73(a), "value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." O.C.G.A. § 18-2-73(a). There is no indication that caring for the elderly is the business of Broder's children. And, as with the hypothecation of stock from Broder to Lyndy Broder, there is no written evidence of this agreement. Accordingly, there are questions of fact concerning whether Broder received reasonably equivalent value in exchange for the transfers of property to his children.

In CSX Transp., Inc. v. Leggett, No. 1:07-cv-1152-WSD, 2010 WL 3210841 (N.D. Ga. Aug. 12, 2010), the court found that several transfers of property from a husband, who was facing a judgment against him, to his wife and brother, were fraudulent under Georgia law. There were three transfers at issue: (1) the defendant

transferred over one hundred thousand dollars to a bank account in his wife's name that he controlled; (2) the defendant sold property to his brother, who then quitclaimed the house to the defendant's wife, who in turn refinanced the property and refunded the brother; and (3) the defendant transferred rental property to his wife with no apparent consideration and continued to personally receive the rental payments. The court concluded that the plaintiff's prior judgment against the defendant was a valid claim against the defendant, that the defendant did not receive reasonably equivalent value because he did not receive consideration from his wife when he transferred property to her, and that the defendant was insolvent at the time of the transfers based on his bankruptcy filings. The court granted summary judgment to the plaintiff, although the motion was unopposed. Id. at *1-5.

Here, the similarities between the transfers by Broder to his wife and the transfers by the defendant in Leggett to his wife illustrate why questions of fact remain. First, as in Leggett, Broder substantially retained control of the assets he transferred to his family. Likewise, as noted above, it is not clear that Broder received consideration for all of the transfers to his wife and children. Finally, although Broder maintains he was not in dire financial circumstances at the time of the earlier transfers, his subsequent financial duress is sufficient to create an issue of fact concerning his

solvency at the time he made each transfer. Accordingly, the Defendants' motions for partial summary judgment should be denied.

## IV.  Conclusion

For the reasons set forth above, the Plaintiff's Motions for Partial Summary Judgment [Case No. 1:12-cv-2554-TWT, Doc. 83; Case No. 1:12-cv-2569-TWT, Doc. 81] are GRANTED. The parties are directed to confer and submit proposed final judgments, including attorneys' fees, on the Plaintiff's claims on the promissory notes in both Case No. 1:12-cv-2554-TWT and Case No. 1:12-cv-2569-TWT. The Defendants' Motions for Partial Summary Judgment [Case No. 1:12-cv-2554-TWT, Doc. 82; Case No. 1:12-cv-2569-TWT, Doc. 80] are DENIED.

SO ORDERED, this 31 day of January, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge